IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
at KANSAS CITY

| | |
|---|---|
| MONIKA ANDERSON, )<br>On behalf of herself and )<br>all others similarly situated, )<br>  )<br>Plaintiffs, )<br>v. )<br>  )<br>EMEREST HEALTH OF MISSOURI, LLC, et al., )<br>Defendants. ) | Case No. 4:22-cv-00452-BP |

**JOINT MOTION FOR: (1) CERTIFICATION OF FLSA COLLECTIVE ACTION FOR SETTLEMENT PURPOSES; (2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT; (3) APPROVAL OF NOTICE TO THE RESPECTIVE CLASS MEMBERS; AND (4) DISMISSAL WITH PREJUDICE OF ALL DEFENDANTS EXCEPT EMEREST HEALTH OF MISSOURI, LLC AND EMEREST HEALTH CDS OF MISSOURI, LLC**

COME NOW Plaintiff Monika Anderson, on behalf of herself and all others similarly situated (hereinafter "Plaintiff"), through her attorneys ("Class Counsel"), and Defendants Emerest Health of Missouri, LLC, Emerest Health CDS of Missouri, LLC, Emerest Home Care of Connecticut, LLC, Emerest Health, LLC, Emerest Health of Minnesota, LLC, Emerest Health Population Management, LLC, Emerest Health IPA, LLC, Emerest Certified Home Health Care of New York, LLC, Emerest Caregiver Resources of NY, LLC, and Emerest Health, Inc. (hereinafter "Defendants"), through their attorneys, and for their Joint Motion For: (1) Certification of FLSA Collective Action for Settlement Purposes; (2) Preliminary Approval of Class Action Settlement; (3) Approval of Notice to the Respective Class Members; and (4) Dismissal with Prejudice of All Defendants Except Emerest Health of Missouri, LLC and Emerest Health CDS of Missouri, LLC, state as follows:

1

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Plaintiff's Lawsuit.

Defendant Emerest Health CDS of Missouri, LLC ("Emerest CDS") is a vendor of consumer-directed services ("CDS") for persons with physical disabilities. Services are reimbursed by Missouri Medicaid (Mo HealthNet), which is administered by the Missouri Department of Health and Senior Services ("DHSS"). CDS consist of personal care services (e.g., bathing, cleaning, and meal preparation) and do not include any tasks that must be performed by a licensed professional. A recipient of CDS, known as a "consumer," must be able to direct the care planning process and hire and supervise a personal care attendant ("PCA") to provide these services under Missouri regulations. Upon determination of eligibility, DHSS develops a personal care assistance services plan ("Plan of Care"), which includes the maximum number of units of each type of personal care service that may be provided by the PCA. DHSS utilizes third party vendors to provide fiscal management services on behalf of consumers and to perform certain administrative tasks on behalf of DHSS. Upon determination of eligibility and DHSS's completion of a Plan of Care, the consumer must choose a vendor of personal care assistance services from a list of eligible vendors maintained by DHSS. Emerest CDS is one such vendor.

Plaintiff filed this lawsuit against Defendants on July 15, 2022, alleging that the consumers and Defendants are "joint employers" of hourly PCAs. The lawsuit further alleges that hourly PCAs regularly worked in excess of forty (40) hours per week without receiving minimum wage and overtime pay pursuant to the Fair Labor Standards Act ("FLSA") (Count I of the Complaint) and the Missouri Minimum Wage Law ("MMWL") (Count II of the Complaint), and also without receiving proper straight-time pay (also known as "gap time" pay) pursuant to Missouri common law (Count III of the Complaint). ECF Doc. 1.

Defendants deny liability under Plaintiff's claims as asserted in the Complaint. Defendants also deny that they have an employer-employee relationship with hourly PCAs and maintain that the consumers for whom the PCAs perform personal home care services are the sole employers of the PCAs.

The Complaint alleges claims not only against Defendants Emerest Health of Missouri, LLC and Emerest Health CDS of Missouri, LLC, but also against the following Emerest companies in Connecticut, Minnesota, and New York: Emerest Home Care of Connecticut, LLC, Emerest Health, LLC, Emerest Health of Minnesota, LLC, Emerest Health Population Management, LLC, Emerest Health IPA, LLC, Emerest Certified Home Health Care of New York, LLC, Emerest Caregiver Resources of NY, LLC, and Emerest Health, Inc. (the "Out of State Defendants"). However, after exchanging information with Defendants, the Parties agreed that the Out of State Defendants might not be properly before this Court, and the workers of those companies (if any) are not similarly situated to Plaintiff. *See* ECF Doc. 13. For these reasons, claims against the Out of State Defendants have been abandoned and the Parties respectfully ask this Court to dismiss all of the Out of State Defendants from this case with Prejudice. After the requested dismissal, the only two Defendants that should remain in this case are Emerest Health of Missouri, LLC and Emerest Health CDS of Missouri, LLC.

**B.     The Parties' Settlement.**

Before Plaintiff sought conditional or class certification, the Parties mediated this case before David Vogel, who is an experienced mediator well versed in wage and hour litigation who regularly defended cases similar to this one before becoming a full-time mediator. Through their participation in mediation, Plaintiff and Defendants have resolved their differences by negotiating a settlement which embodies a reasonable compromise that is fair to both the putative Collective

Class Members and Defendants and is in the best interests of the putative Class Members. The Collective Action Settlement Agreement, a copy of which is attached hereto as **Exhibit A**, is the result of arm's length bargaining through counsel that occurred via mediation, review and analysis of thousands of pages of documents, and detailed calculations that occurred over a period of many months. The Parties' Settlement Agreement reflects a desire by both Plaintiff and Defendants to fully and finally settle the claims and issues of law and fact in the lawsuit in an expeditious manner.

Solely for purposes of settlement, the parties stipulate to final certification of a collective action under Section 216(b) of the Fair Labor Standards Act, consisting of all current and former personal care attendants (PCAs) who performed consumer-directed services for at least two consumers affiliated with Emerest Health CDS of Missouri, LLC, and who worked more than 40 hours in at least one workweek at any time from July 15, 2019 to January 1, 2023 (the "FLSA Collective Action"). The proposed settlement is to be administered as an opt-in class, whereby those who affirmatively opt-in to the settlement class will be eligible to receive a settlement payment in exchange for a release of the federal and state law claims asserted in Plaintiff's lawsuit. Defendants have agreed to pay 100% of any hours worked over 40 in a workweek that were unpaid but were authorized by applicable Plans of Care during the Class Period. Defendants have also agreed to pay 100% of any hours worked over 40 in a workweek that were unpaid and unauthorized by applicable Plans of Care to the extent that such hours were performed for a non-family or household member and such hours did not exceed the total monthly hours authorized by the applicable Plans of Care.

The settlement fund established to provide the settlement payments totals $202,000.00. The Parties agree that if all eligible class members make timely claims, approximately $110,000.00 in total payments will be made to the class. The Parties likewise agree that Monika Anderson, as

4

4889-9214-3988.v.4    Case 4:22-cv-00452-BP    Document 40    Filed 08/18/23    Page 4 of 12

class representative, will receive a service award of $10,000.00 for her efforts prosecuting the case, and that an additional $10,000.00 will be reserved to resolve class administration issues. Defendants have also agreed not to oppose Plaintiff counsel's motion for approval of their fees, costs, and expenses, not to exceed $67,330.00 in fees (one-third of the total settlement) and $4,800.00 in costs.

As further discussed below, the settlement meets the criteria for approval of collective action settlements, and therefore preliminary approval at this time is appropriate. To proceed with the settlement process, the Parties respectfully request that the Court:

1. Certify the FLSA Collective Action for purposes of settlement only, consisting of all current and former personal care attendants (PCAs) who performed consumer-directed services for at least two Consumers affiliated with Emerest Health CDS of Missouri, LLC, and who worked more than 40 hours in at least one workweek at any time from July 15, 2019 to January 1, 2023.

2. Grant preliminary approval of the Class Action Settlement Agreement attached as **Exhibit A**;

3. Appoint Plaintiff as the Class Representative of the FLSA Collective Action and Michael Hodgson of the Hodgson Law Firm, LLC and Phillip M. Murphy of the Law Office of Phillip M. Murphy as Class Counsel;

4. Approve the Class Notice attached hereto as **Exhibit B**;

5. Approve the Opt-In Consent Form and Release of Claims attached hereto as **Exhibit C**.

6. Dismiss the following Defendants from this lawsuit with prejudice: Emerest Home Care of Connecticut, LLC, Emerest Health, LLC, Emerest Health of Minnesota, LLC, Emerest

Health Population Management, LLC, Emerest Health IPA, LLC, Emerest Certified Home Health Care of New York, LLC, Emerest Caregiver Resources of NY, LLC, and Emerest Health, Inc.

## II. LEGAL ARGUMENT

Court approval of the Collective Action Settlement Agreement is appropriate because the settlement ends contested litigation and is fair, reasonable and provides an immediate benefit to the putative Class Members.

### A. FLSA Settlements Require Court Approval.

Courts have held that purely private settlements of FLSA claims are unenforceable. *See, e.g., Shackleford v. Cargill Meat Solutions*, 2013 WL 209052, *3 (W.D. Mo. Jan. 17, 2013); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 296 F.3d 922, 932-33 (8th Cir. 2005); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982). Therefore, wage claims arising under the FLSA can be settled in one of two ways. First, 29 U.S.C. § 216(c) authorizes the Secretary of Labor to supervise payment of unpaid wages owed to employees. Second, in a private action brought pursuant to 29 U.S.C. § 216(b), a district court may approve a settlement reached as a result of contested litigation resolving a bona fide dispute between the parties. *Id.* (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)).

In a private action under § 216(b), a court must make two inquiries. First, the court must determine if the settlement was the product of "contested litigation." Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a bona fide dispute between the parties. To indicate fairness, Courts will generally rely on the adversarial nature of a litigated FLSA case that results in settlement. *Lynn's Food Stores*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

### 1. The Settlement Is a Result of Contested Litigation.

The instant case is the product of contested litigation. The case was filed on July 15, 2022. ECF Doc. 1. Pursuant to the Court's MAP Order (ECF Doc. 2), the parties participated in mediation after exchanging substantive information about the Plaintiff's work responsibilities, Defendants' corporate structure and policies, and Defendants' records of PCAs like Plaintiff. It should also be noted that the schematic alleged by Plaintiff is somewhat novel—it is not a "donning and doffing" case, a traditional misclassification case, or an "off-the-clock" work case. The undersigned represent that very few cases have been decided that involve a schematic similar to that alleged by Plaintiff.

The mediation lasted a full day. Both before and during the mediation, the Parties had significant disagreements and disputes over both liability and damages. These disputes included, but were not limited to, disputes over:

- Whether the putative class members were actually employed by Defendants.
- If employed, the scope of any employment relationship between the putative class members and each Defendant.
- Whether applicable regulations limited any potential employment relationship to those hours authorized by applicable Plans of Care for the consumers in question.
- The number of hours worked by the putative class members.
- The nature and extent of the monetary damages of Plaintiff and those alleged to be similarly situated, in the event Plaintiff could prove one or more Defendants were liable for damages.
- Whether one or more Defendants were liable for liquidated damages under the FLSA.

7

4889-9214-3988v.4   Case 4:22-cv-00452-BP   Document 40   Filed 08/18/23   Page 7 of 12

- Whether a third year of overtime wages was recoverable on the FLSA claim, given the requirement that Plaintiff prove Defendants willfully violated the FLSA.

Based on the foregoing, the Parties believe that, had the case not settled; the litigation going forward would have been extremely complex, time consuming and expensive. The Parties also agree that the litigation had the potential to result in a lower damages recovery by the class as a whole than is being provided in the settlement; further, Plaintiff would have had to obtain and maintain collective and class certification throughout the litigation, which Defendants planned to vigorously contest. For all of these reasons, it is clear that the proposed settlement is the product of contested litigation between the parties.

### 2. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a Bona Fide Dispute Between the Parties.

The second prong of the Court's settlement approval inquiry focuses on two issues. First, a bona fide dispute must be shown. Second, the Court must scrutinize the proposed settlement to ensure it is fair and reasonable.

For many of the same reasons discussed above, it is clear that a bona fide dispute over both liability and damages existed between the Parties. Plaintiff has consistently maintained that the applicable FLSA regulations established Defendants as "joint employers" of the PCAs at issue, and that applicable Department of Labor guidance does not limit the scope of any employment relationship when PCAs worked in excess of the hours authorized by applicable Plans of Care. Defendants have adamantly disagreed with both positions—maintaining that they do not exercise sufficient control or supervision over the PCAs to be their "joint employers," and further maintaining that any employment relationship (without admitting same) that might exist is expressly limited by the applicable Plans of Care (i.e., PCAs cannot claim recovery for working hours that are not authorized by the applicable Plans of Care). Defendants have also consistently

8

maintained that they have acted in good faith at all times, and that any violations (to the extent they exist) were not willful.

The settlement is also fair and equitable. It provides participating Collective Class Members with 100% of their allegedly unpaid hours worked at their applicable rates of pay to the extent that such hours were authorized by applicable Plans of Care or, if unauthorized, were performed for non-family or household members and do not exceed the total monthly hours authorized by the applicable Plans of Care. In addition, the settlement was the product of arm's length negotiations by experienced counsel after almost a year of litigation and related motion practice and provides monetary relief to all participating members of the settlement class. It also eliminates the inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores*, 679 F.2d at 1354 (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted).

The settlement offers a payment to the Plaintiff and participating Class Members now. Further, if the settlement is not approved, participating Class Members may not receive any recovery at all after trial and appeals. Likewise, to the extent that recovery is obtained, it may very well be less than the amount recovered under the settlement and may not occur until after years of litigation and related appeals. For these reasons, settlement approval now should be highly

9

favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). The Parties respectfully request the FLSA Collective Action Settlement be approved.

The settlement also resolves the Plaintiff's claims for attorneys' fees and costs, foreclosing further litigation on this issue. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). Class Counsel have incurred attorneys' fees and costs/expenses in connection with prosecuting this lawsuit. This case required significant time on the part of Class Counsel to perform numerous tasks required to obtain the settlement reached by the parties, including but not necessarily limited to investigating and researching the claims before filing suit; preparing suit papers; further investigating and analyzing the claims of class members; engaging in motion practice, reviewing and analyzing voluminous documentation and calculations provided by Defendants; researching issues relating to liability and damages; negotiating the terms of settlement with Defendants' counsel; and preparing papers to finalize the settlement and petition the Court for approval of the settlement. The Parties are in agreement about the amount of attorney's fees and costs that should be awarded to Class Counsel, as well as the amount that should be awarded to the named Plaintiff for her service to the class.

In sum, the Parties are of the opinion that the Collective Action Settlement Agreement is fair, reasonable, adequate, and is in the best interests of the putative Collective Class Members in light of all known facts and circumstances, including the significant risks and delays of litigation presented by Defendants' defenses and potential appellate issues that might be asserted. Collective Class Counsel have fully advised Plaintiff of the Collective Action Settlement Agreement, and Plaintiff approves of and consents to the settlement.

Defendants, in turn, deny and continue to deny the claims asserted in the action. Defendants asserted and continue to assert defenses to this action and expressly denied and continue to deny any wrongdoing or legal liability arising out of the action. Neither the Class Action Settlement Agreement nor any action taken to carry out the Class Action Settlement Agreement is or may be construed as an admission, concession, or indication that Defendants or anyone else committed any wrongdoing whatsoever.

The parties now desire to fully, finally, and forever settle, compromise, and discharge the claims asserted in the lawsuit.

The parties recommend that the Court order that the class notice be mailed to the class members within thirty (30) calendar days after the issuance of the Court's order granting preliminary approval.

WHEREFORE, Plaintiff and Defendants pray this Court for an Order certifying the FLSA collective action as identified above solely for settlement purposes, approving of the Collective Action Settlement Agreement, approving the form and consent of the Collective Action Notice attached hereto, approving the form and content of the Opt-In Consent Form and Release of Claims attached hereto, directing the Class Administrator to mail such Notice to all putative FLSA opt-in plaintiffs, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

| LAW OFFICE OF PHILLIP M. MURPHY, II | GREENSFELDER, HEMKER & GALE, P.C. |
|---|---|
| /s/ Phillip M. Murphy II | /s/ Molly R. Batsch |
| Phillip M. Murphy II, MO #61467 | Molly R. Batsch, MO #61163 |
| 4717 Grand Ave., Ste. 300 | David J. Wasserman, MO #72187 |
| Kansas City, MO 64112 | 10 S. Broadway, Suite 2000 |
| (913) 661-2900 (phone) | St. Louis, MO 63102 |
| (913) 312-5841 (fax) | (314) 241-9090 (phone) |
| phillip@phillipmurphylaw.com | (314) 241-8624 (fax) |
| | mrb@greensfelder.com |
| | dwasserman@greensfelder.com |

THE HODGSON LAW FIRM, LLC          **ATTORNEYS FOR DEFENDANTS**

/s/ Michael Hodgson
Michael Hodgson, MO #63677
3609 SW Pryor Rd.
Lee's Summit, MO 64082
(816) 600-0117 (phone)
mike@elgkc.com

**ATTORNEYS FOR PLAINTIFFS**